IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



PATRICIA HENTOSH,

        Plaintiff,

v.                                              Civil Action No. 2:13cv290

OLD DOMINION UNIVERSITY

        Defendant.

## OPINION AND ORDER

This matter is before the Court on the Defendant Old Dominion University's ("ODU" or "Defendant") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) ("Motion"). Doc. 2. For the reasons stated herein, the Court **DENIES** the Motion.

### I.    BACKGROUND

#### A. Factual Allegations[1]

Since 2006, Patricia Hentosh ("Plaintiff" or "Hentosh"), a White woman, has been a professor with ODU's School of Medical Laboratory and Radiation Sciences ("MLRS"), one of several schools/departments within the College of Health Sciences ("CHS"). Doc. 1, Ex. 1; see also Doc. 1 ¶ 13.[2] In late 2011, Plaintiff's application for tenure was denied, and on June 8, 2012, Plaintiff was extended an untenured terminal appointment that terminated her employment with ODU in July 2013. Doc. 1 ¶¶ 102, 110. Plaintiff alleges that she had satisfied "the

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.
[2] MLRS is now known as the School of Medical Diagnostic & Translational Sciences, but for purposes of this Motion, will be referred to as MLRS. Doc. 1 ¶ 13.

legitimate requirements of ODU" for tenure, and only suffered this adverse employment action as a result of discriminatory and retaliatory actions by ODU. Id. ¶¶ 111–12.

According to the Complaint, the facts relevant to the claims in the instant action are tied to a dispute between Plaintiff and Anna Jeng, an Asian professor, in ODU's School of Community and Environmental Health ("CEH"), a division of CHS. Doc. 1 ¶¶ 13, 17–18.[3] A dispute ensued between the two over Hentosh's concerns of perceived lab safety issues created by Jeng. Id. ¶¶ 22–23. Ultimately, Jeng filed a complaint with ODU's Equal Opportunity/Affirmative Action Office ("EO/AA") alleging Hentosh's actions created a hostile work environment. Id. ¶¶ 31–34.

On April 27, 2009, EO/AA Senior Investigator Barbara Reynolds submitted a report concluding that Hentosh's interactions with Jeng were in violation of ODU's disruptive behavior policy (the "Reynolds Report"). Doc. 1 ¶ 42. The Reynolds Report was shared with CHS administrators and incorporated into Plaintiff's 2009 performance evaluation. Id.; see also id. at ¶ 43.[4]

On June 2, 2009, Plaintiff filed a discrimination complaint with the EO/AA, raising allegations of gender discrimination and retaliation against Jeng and the chair of CEH. Doc. 1 ¶ 46. On June 10, 2009, Plaintiff learned that the EO/AA had excluded Jeng as a co-respondent, and would not investigate Jeng as a party to Plaintiff's complaint. Doc. 1 ¶ 47. On August 21, 2009, the EO/AA issued a memorandum rejecting Plaintiff's complaints. Doc. 1 ¶ 49.

---

[3] The Complaint contains numerous more allegations concerning the Hentosh-Jeng dispute and the tenure review process. For the sake of brevity, the Court is only recounting the most pertinent facts.
[4] The evaluation letter contained language admonishing Plaintiff for her behavior and interactions with Jeng, and advising that any similar interactions in the future would result in more severe sanctions. Doc. 1 ¶ 43. According to Plaintiff, this was the first time she learned she was being investigated. Id. Plaintiff unsuccessfully sought to appeal the EO/AA findings, and sought removal of sanctioning language from her personnel file. Plaintiff's efforts to have the Reynolds Report expunged from her personnel file were also unsuccessful. Doc. 1 ¶ 52–53.

On May 11, 2010, Plaintiff filed a formal written grievance with ODU, alleging race discrimination. Doc. 1 ¶ 54. Shortly thereafter, on May 26, 2010, Plaintiff filed her First Discrimination Charge with the Equal Opportunity Employment Commission ("EEOC"), alleging race discrimination and retaliation ("First EEOC Charge"). Doc. 1 ¶ 55. ODU informed Plaintiff that it would not process her grievance on July 23, 2010. Doc. 1 ¶ 57.

On June 25, 2010, Jeng filed a complaint with the EO/AA, alleging Plaintiff had continued to engage in conduct that violated the disruptive behavior policy and created a hostile work environment. Doc. 1 ¶ 61. An independent investigation was conducted, and the EO/AA issued a report finding that Plaintiff had violated ODU's disruptive behavior policy. Doc. 1 ¶ 65. Plaintiff was informed of the report's findings on December 3, 2010, and instructed to meet with CHS's interim dean, Deanne Shuman. Doc. 1 ¶ 67. Following the December 14, 2010 meeting, Shuman found Plaintiff guilty of violating ODU's disruptive behavior policy and issued a written sanction. Doc. 1 ¶ 69.[5]

In Fall 2011, Hentosh began preparing her application for tenure with ODU. Doc. 1 ¶ 86. Ranking professors at ODU are invited to apply for tenure toward the end of their probationary period, usually during their fifth year of teaching. Doc. 1, Ex. 13 pp. 52. Tenure decisions are based on "merit" and "the determined long-term needs of the department, college, and university." Doc. 1, Ex. 13 pp. 52. The tenure review process at ODU comprises several steps. Doc. 1 ¶¶ 78–84.

Before submitting her application materials, Plaintiff learned that Jeng was a member of the CHS College Tenure Committee. Doc. 1 ¶ 87. Plaintiff expressed her objection to Jeng's participating in her tenure review to Sophie Thompson, chair of MLRS, and asked how to

---

[5] Plaintiff objected to the sanction as untimely made, and the sanction was converted to a counseling memo, in violation of ODU's policies prohibiting issuance of counseling memos to faculty members. Doc. 1 ¶ 71.

3

request that Jeng be excluded from Plaintiff's tenure evaluation. Doc. 1 ¶ 88. Thompson met with the dean of CHS, Shelley Mishoe, to discuss the conflict of interest, and apparently left that meeting thinking Jeng would be recused from the College Tenure Committee. Doc. 1 ¶ 89.

On September 29, 2011, the MLRS Tenure Committee met to discuss and vote on Plaintiff's tenure application. Doc. 1 ¶ 90.[6] Two members of the committee voted in favor of granting Plaintiff tenure, while two voted against tenure. Id.; see also Doc. 1, Ex. 16. All committee members gave Plaintiff high marks for teaching, but the two voting against tenure found that Plaintiff did not meet the requirements for research. Id. Plaintiff alleges that the Committee did not explain their negative marks, in violation of ODU policy. Id. Plaintiff further alleges those voting against tenure voted inconsistent with a prior recommendation in 2010, recommendating tenure for Angela Bell, a Black professor with "no grant funding," "extremely limited grant submissions," and "no publications." Id.

After receiving the MLRS tenure committee's recommendation, Thompson, as chair of MLRS, conducted her own tenure evaluation. Doc. 1 ¶ 91. On October 12, 2011, Thompson submitted a recommendation that Plaintiff be granted tenure to Shelley Mishoe, CHS Dean. Id. ¶ 91.

On November 1, 2011, the CHS Tenure Committee met to discuss and vote on Plaintiff's tenure application. Doc. 1 ¶ 92. Serving on the committee were Richard Heller (from MLRS); Carolyn Rutledge (from the School of Nursing); Gayle McCombs (from the School of Dental Hygiene); Gail Grisetti (from the School of Physical Therapy); and Jeng (from CEH). Id. Members of the CHS Tenure Committee were aware of the Jeng-Hentosh dispute, and at least one member suggested that Jeng should recuse herself. Doc. 1 ¶ 97. Jeng refused and voted on

---

[6] Committee members included MLRS faculty members, C. Thomas Somma, Richard Heller, Faye Coleman, and Scott Sechrist. Id.

Plaintiff's tenure application. Id. Ultimately, the committee voted against tenure by a vote of four to one, after finding that Plaintiff's "scholarly activities fall below expectations of a tenured faculty member." Doc. 1, Ex. 18 at 2. The committee specifically cited to Plaintiff's failure to obtain external funding for her research. Id.

On November 8, 2011, after receiving the CHS tenure committee memo, Plaintiff wrote an email to CHS Dean Mishoe, requesting an explanation as to why Jeng was not excluded from voting on Plaintiff's tenure application. Doc. 1 ¶ 100; see also Doc. 1, Ex. 23. Mishoe responded the same day, assuring Plaintiff that Jeng's participation as an elected member of the committee was not an indication that Plaintiff's concerns were ignored, but rather, a reflection of ODU's commitment to the fairness of the tenure review process. Doc. 1, Ex. 23. Specifically, Mishoe noted: "[i]n keeping with academic freedom and integrity, the tenure review process (through voting and progressive stages of independent decision making) ensures fairness in the consideration of your merits, along with the long-term needs and mission of the school, college, and university." Id. Mishoe informed Plaintiff that she was evaluating her application and would inform Hentosh of her decision when it was made. Id.

On December 15, 2011, Mishoe sent a memorandum to ODU's Provost, Carole Simpson, recommending denial of Plaintiff's tenure application. Doc. 1 ¶ 102. In explaining her recommendation, Mishoe noted, "[Hentosh] has been unable to develop a solid research program consistent with the level of full professor as specified in the faculty handbook." Doc. 1, Ex. 24. Mishoe recognized Plaintiff's efforts, but noted "Dr. Hentosh has been unable to establish a research program in cancer research or related areas, reflected by her lack of grants, publications, and national presentations." Id. Mishoe also recognized Plaintiff's teaching and service contributions; and specifically referenced Plaintiff's positive external reviews, while also noting

that none of the external reviews considered Plaintiff's "current rank and research productivity." Id.[7]

On February 10, 2012, Plaintiff sent an email to ODU's Office of University Counsel, requesting information about the procedure for seeking review of her tenure recommendations. Doc. 1 ¶ 104. Plaintiff was referred to Professor Chandra DeSilva, the faculty member designated by the Provost to address faculty members' concerns and questions regarding tenure. Doc. 1 ¶ 101. On February 11, 2012, Silva informed Plaintiff that she would need to make a request for review in writing to the Provost, who would review her materials and decide whether the tenure file would receive further review. Doc. 1 ¶ 105. Plaintiff was also informed that if the Provost decided against further consideration of her bid for tenure, the decision was final. Id.[8]

On April 6, 2012, Plaintiff submitted a written request for review of her tenure decision to the Provost. Doc. 1 ¶ 106. On April 11, 2012, Plaintiff received a letter indicating that her request for review was untimely filed, as it was not received by the December 20, 2011 deadline. Doc. 1 ¶ 107.[9] When Plaintiff objected to the letter, stating that she had not been informed of the deadline, she was told "there is nothing we can do." Doc. 1 ¶ 108. As a result, Plaintiff did not attempt to seek further review of her application, and on June 8, 2012, was issued a one-year terminal appointment. Doc. 1 ¶¶ 109–10. Plaintiff's employment with ODU ended in July 2013.

B. Procedural History

---

[7] Plaintiff claims that the CHS Tenure Committee and Mishoe's emphasis on lack of funding and publications was pretextual, and in direct contrast to the standards applied to other similarly situated professors who were granted tenure at ODU. Doc. 1 ¶¶ 98, 102.

[8] Plaintiff claims this information is inconsistent with the faculty handbook, which provides: "if both [the decision of the dean and the college tenure committee] are negative, the faculty member may request a further review by the provost and vice president for academic affairs, who makes a final determination concerning further consideration of tenure." Doc. 1, Ex. 13 at 54.

[9] As Plaintiff correctly points out, ODU's schedule for faculty seeking tenure does not set forth a deadline for review of negative tenure decisions by the college committee and dean. The December 20th deadline applies only, "[i]n those cases where the faculty member requested further review because neither the department/school committee nor the department/school chair recommends tenure." Doc. 1, Ex. 15.

This is the second lawsuit Plaintiff has filed against ODU. See Hentosh v. Old Dominion University, No. 2:12cv222-RGD-LRL ("Hentosh I"). Because the instant Motion asserts arguments related to Hentosh I, the procedural history of both cases is recounted below.

i. *Hentosh I*

Plaintiff filed her First EEOC Charge on May 26, 2010. See No. 2:12cv222, Doc. 25-1 (charge number 437-2010-00727). On January 26, 2012, the EEOC informed Plaintiff that they were dismissing her charge and issuing a Notice of Right to Sue. No. 2:12cv222, Doc. 25-2.

The complaint in Hentosh I was filed on April 24, 2012, within the applicable ninety (90) day period. No. 2:12cv222, Doc. 1. Count one of the complaint alleges ODU discriminated against Plaintiff on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964. Id. ¶¶ 112. The second count accuses ODU of retaliating against Plaintiff for making a discrimination charge against ODU, also in violation of Title VII. Id. ¶ 116. Both counts specifically indicate that as a direct result of the discrimination and retaliation, Plaintiff was denied tenure and forced to leave ODU at the expiration of a terminal contract. Id. ¶¶ 114, 117.

On August 3, 2012, Judge Robert Doumar dismissed Plaintiff's discrimination claims because they were not timely raised with the EEOC and thus outside the Court's jurisdiction. No. 2:12cv222, Doc. 13. Plaintiff then filed her second charge of discrimination against ODU with the EEOC ("Second EEOC Charge") on August 23, 2012. No. 2:13cv290, Doc. 1, Ex. 1.

On March 13, 2013, Defendant moved for summary judgment on the remaining retaliation claims. No. 2:12cv222, Doc. 21. Plaintiff filed a motion to stay and consolidate the retaliation claim with the discrimination claim raised in the second (pending) EEOC charge on March 22, 2013. No. 2:12cv222, Doc. 24. The EEOC issued a Notice of Right to Sue on the second charge on March 31, 2013. No. 2:13cv290, Doc. 1, Ex. 2. On May 21, 2013, Plaintiff

filed the instant Complaint. No. 2:13cv290, Doc. 1. The same day, Plaintiff filed an amended motion to stay and consolidate actions for trial, asking the Court to consolidate <u>Hentosh I</u> and <u>Hentosh II</u>. No. 2:12cv222, Doc. 46.

On May 28, 2013, the Court held a hearing on the motion for summary judgment, where it took the matter under advisement. No. 2:12cv222, Doc. 49. On June 4, 2013, the Court issued an order denying Plaintiff's motions to stay and consolidate the cases. No. 2:12cv222, Doc. 50. On July 1, 2013, Plaintiff filed a motion to voluntarily dismiss the action, without prejudice. No. 2:12cv222, Doc. 55. On July 12, 2013, the Court issued an order granting Defendant's motion for summary judgment and dismissing Plaintiff's retaliation claims on the merits, while also denying Plaintiff's motion for voluntary dismissal. No. 2:12cv222, Doc. 64. Plaintiff is appealing that ruling. No. 2:12cv222, Doc. 70.

**ii.** <u>Hentosh II</u> *(The Instant Action)*

On August 23, 2012, Plaintiff filed her Second EEOC Charge. No. 2:13cv290, Doc. 1, Ex. 1 (charge number 437-2012-0931).[10] The EEOC issued a Notice of Right to Sue on March 31, 2013. <u>Id.</u>, Ex. 2.

The Complaint in the instant action ("<u>Hentosh II</u>") was filed on May 21, 2013, within ninety (90) days of receipt of the Notice of Right to Sue for the Second EEOC Charge. Doc. 1. Plaintiff alleges that ODU has a "policy and practice" of discrimination against white employees, as opposed to minority employees. Doc. 1 ¶ 10. According to Plaintiff this is a policy and practice of "minority favoritism."[11] <u>Id.</u>

---

[10] All future citations to the docket will refer to 2:13cv290, unless otherwise noted.
[11] The Complaint describes this policy as:
>ODU treating white employees less favorably than similarly situated minority employees in the terms and conditions of their employment [sic] including but not necessarily limited to work environment, discipline, discharge, and tenure . . . [by] punishing and retaliating against white employees who express concerns . . . about conduct by minority employees . . . [by] deliberately disregarding concerns, criticisms or complaints by white employees about conduct by minority employees, while . . . acting on [similar complaints and

8

Count One of the Complaint accuses ODU of racial discrimination, in violation of Title VII. Doc. 1 ¶ 116. Count Two accuses ODU of retaliating against Plaintiff for opposing discriminatory practices and making an EEOC charge, also in violation of Title VII. Doc. 1 ¶ 119.

The instant Motion and supporting brief was filed on July 19, 2013. Docs. 2, 3. The response in opposition was due on August 2, 2013. Plaintiff filed a motion for extension of time to file response and its memorandum in opposition on August 6, 2013. Docs. 6, 8. Magistrate Judge Douglas E. Miller entered an Order granting the motion for extension of time on August 19, 2013. Defendant's Reply was filed on August 19, 2013, and the Motion was referred for review on August 23, 2013. Doc. 10.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In deciding the motion, a court may consider the facts alleged on the face of the

---

criticisms raised] by minority employees about conduct by white employees . . . and [by consistently resolving conflicts between white and minority employees] against white employees and in favor of minority employees. Doc. 1 ¶ 10.

complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal when the Court lacks subject matter jurisdiction.[12] The plaintiff, having invoked the jurisdiction of the court, bears the burden of proving that subject matter jurisdiction is proper. A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 548 F. Supp. 2d 219, 221 (E.D. Va. 2008). The evidentiary standard for motions made pursuant to Rule 12(b)(1) depends on whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the truthfulness of the factual allegations supporting jurisdiction. Allen v. Coll. of William & Mary, 245 F. Supp. 2d 777, 782–83 (E.D. Va. 2003). Where a defendant attacks "the sufficiency of the complaint, the court must accept all of the complaints factual allegations as true." Id. at 783. Where a defendant claims that the facts alleged in the complaint that establish jurisdiction are untrue, however, "the pleadings are regarded as mere evidence," and the court may weigh the pleadings and all other evidence to determine whether subject matter jurisdiction exists. Id.

### III.  ANALYSIS

**A.  Lack of Subject Matter Jurisdiction**

---

[12] Indeed, the Federal Rules of Civil Procedure permit a court to raise the lack of subject matter jurisdiction sua sponte, and require that a court finding a lack of subject matter jurisdiction dismiss the action. Fed. R. Civ. P. 12(h)(3).

An employee must have filed a timely EEOC charge before he or she can litigate an employment discrimination claim. See Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 623–24 (2007) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)). Generally, employees in Virginia have 300 days to file an administrative charge with the EEOC. Lewis v. Norfolk S. Corp., 271 F. Supp. 2d 807, 811 (E.D. Va. 2003).

Defendant seeks dismissal of any of Plaintiff's claims that rely on alleged acts of discrimination or retaliation that occurred more than 300 days before Plaintiff filed her Second EEOC Charge. Doc. 3 at 6.[13] Specifically, Defendant argues that Plaintiff's claims cannot rely on the factual allegations surrounding the Jeng-Hentosh dispute, set forth in paragraphs twenty (20) through seventy-one (71) of the Complaint, because the conduct relayed there is time-barred. Id. Defendant also argues that several allegations raised in support of Plaintiff's tenure discrimination claim appear to be time barred, either because Plaintiff does not allege when the events in question took place, or the acts alleged occurred before October 28, 2011. Id.[14] However, Plaintiff correctly points out that these allegations are probative of Defendant's unlawful animus, and may be considered as evidence. See United Airlines, Inc. v. Evans. 431 U.S. 553, 558 (1977).

Accordingly, the Defendant's Motion for Dismissal under Rule 12(b)(1) is **DENIED.**

B.  **Failure to State a Claim for Which Relief Can be Granted**

   i.  *Count One of the Complaint- Discrimination*

Defendant argues that principles of res judicata preclude this Court from considering Plaintiff's discrimination count, and that the Plaintiff fails to state a claim that is plausible.

---

[13] As noted above, Plaintiff's Second EEOC Charge was filed on August 23, 2012.
[14] In paragraphs eighty-six (86) through ninety-one (91) Plaintiff raises several allegations relating to her objection and attempt to have Jeng recused from the College Tenure Committee; she also complains of mistakes made in the MLRS Tenure Committee vote, which took place on September 29, 2011.

Plaintiff argues that because the discrimination complaint in <u>Hentosh I</u> was dismissed for lack of subject matter jurisdiction, that ruling has no preclusive effect. Additionally, Plaintiff argues that she has pled sufficient facts to state a plausible claim.

### a. Res judicata

"Under <u>res judicata</u> principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." <u>In re Varat Enterprises, Inc.</u>, 81 F.3d 1310, 1314–15 (4th Cir. 1996). The doctrine encompasses two concepts, claim preclusion and issue preclusion (also known as collateral estoppel). <u>Id.</u> at 1315; see also <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 n.5 (2008). "A defendant may assert that a plaintiff's claim is barred by <u>res judicata</u> in a motion to dismiss." <u>Bailey v. Fairfax Cnty., Va.</u>, No. 1:11-CV-624, 2011 WL 4578452, at *3 (E.D. Va. Sept. 29, 2011).

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" <u>Taylor</u>, 553 U.S. at 892 (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748 (2001)). "Three elements are required to implicate [claim preclusion]: (1) the prior judgment was final and on the merits; (2) the parties of both suits are identical or in privity; and (3) both suits are based upon the same cause of action." <u>Bailey</u>, 2011 WL 4578452, at *3; see also <u>Martin v. Am. Bancorporation Ret. Plan</u>, 407 F.3d 643, 650 (4th Cir. 2005) (same).

The narrower doctrine of issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment' even if the issue recurs in the context of a different claim." <u>Taylor</u>, 555 U.S. at 892. Issue preclusion bars a plaintiff's claims if a defendant can show that: (1) "'the issue sought to be precluded is identical to one previously litigated'"; (2) "the issue was actually determined in a

prior proceeding"; (3) "the issue's determination was 'a critical and necessary part of the decision in the prior proceeding'"; (4) "the prior judgment is final and valid"; and (5) "the party against whom [issue preclusion] is asserted 'had a full and fair opportunity to litigate the issue in the previous forum.'" Stoyanov v. Mabus, No. 07-1953, 2013 WL 1104978, at *10 (D. Md. Mar. 15, 2013) aff'd 540 F. App'x 167 (4th Cir. 2013) (quoting Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006)).

"'[D]ismissals for want of jurisdiction are paradigms of non-merits adjudication.'" Shoup v. Bell & Howell Co., 872 F.2d 1178, 1181 (4th Cir. 1989) (quoting Nilsen v. City of Moss Point, Miss., 701 F.2d 556, 562 (5th Cir. 1983)). This is because in granting such dismissals, the court is simply classifying an action, without considering its merits, as outside the power of the court. Id.

There is no dispute that in Hentosh I, the discrimination count was dismissed for a lack of subject matter jurisdiction because Hentosh failed to exhaust her administrative remedies. Thus, Plaintiff's Hentosh I discrimination claim was not disposed of in a final judgment on the merits. Shoup, 872 F.2d at 1181. Accordingly, Count One of the Complaint is not barred by the doctrines of claim or issue preclusion.[15]

### b. Plausibility of Plaintiff's claim

In Defendant's view, the "bare allegations" set forth in Plaintiff's tenure discrimination claim fail to meet the plausibility standard set forth in Iqbal and Twombly, because Plaintiff cannot allege even the most basic prima facie case of racial discrimination. Doc. 3 at 14. While

---

[15] Defendant also argued that this Court should apply the manifestly unfair doctrine to the facts of this case. In Stebbins v. Nationwide Mut. Ins. Co., 528 F.2d 934, 937 (4th Cir. 1975), the Fourth Circuit found that preclusive effect could be given to a procedural dismissal of a prior lawsuit resulting from the plaintiff's failure to satisfy a precondition to suit, if "the circumstances are such that it would be manifestly unfair to subject the defendant to such an action." The Court finds that no such circumstances exist in this case. As Plaintiff's counsel noted at argument, this is Plaintiff's first time having the Court reach the merits of her discrimination claim. While her retaliation claim in Hentosh I was dismissed on summary judgment, she had yet to be heard by this Court on her discrimination claim prior to oral argument on the instant Motion.

the Court acknowledges that this is a close case, as discussed below, the Court finds that the Complaint meets this standard.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C.A. § 2000e–2(a).

There are two ways of proving discrimination under Title VII: "(1) through direct evidence; or (2) through circumstantial evidence under the burden-shifting scheme established in McDonnell Douglas v. Green, 411 U.S. 792, 802–05 (1973)." Spain v. Virginia Com. Univ., No. 3:09CV266, 2009 WL 2461662, at *7 (E.D. Va. Aug. 11, 2009). Direct evidence is "'conduct or statements that both reflect the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Id. (quoting Rhodes v. FDIC, 257 F.3d 373, 391–92 (4th Cir. 2001)). Absent direct evidence, the elements of a prima facie case of Title VII discrimination in a promotion setting are: (1) membership in a protected class; (2) an adverse employment action; (3) at the time of the adverse action, plaintiff was performing his/her job "at a level that met his employer's legitimate expectations and was qualified for the promotion"; and (4) plaintiff was "rejected under circumstances giving rise to an inference of unlawful discrimination." Adams v. Trustees of the Univ. of North Carolina-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011).

Although a plaintiff need not plead facts that constitute a prima facie case to survive a motion to dismiss, the factual allegations must still meet the standards set out in Twombly and Iqbal. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) aff'd sub nom. Coleman v. Court of Appeals of Maryland, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012) (citations omitted). Courts frequently use the evidentiary frameworks set forth above to inform their evaluation of a plaintiff's allegations on a Rule 12(b)(6) motion. Coleman, 626 F.3d at 190.

Hentosh alleges that she was discriminated against because she is White. Doc. 1 ¶¶ 10, 15. She also claims that she was denied tenure and subsequently given a terminal employment contract, ending her employment in. Doc. 1 ¶ 110. Thus, Plaintiff has satisfied the first two prongs of her prima facie case. Adams, 640 F.3d at 558. Additionally, Hentosh alleges that she has satisfied ODU's legitimate tenure requirements, an allegation that relies on Plaintiff's insistence that certain requirements that were emphasized in her tenure review were pretextual, Doc. 1 ¶¶ 111, 90, 98, 102, and thus the third prong of Plaintiff's prima facie case has also been satisfied. See Adams, 640 F.3d at 558. Thus, the only question before the Court is whether Plaintiff has alleged sufficient facts to make it plausible that she was denied tenure under circumstances giving rise to an inference of unlawful discrimination. Id., 640 F.3d at 558.

ODU failed to recuse Jeng from the College Tenure Committee, which plausibly infers unlawful discrimination. Doc. 1 ¶ 93–95. At best, Jeng's participation on the committee may have created only the appearance of impropriety; at worst, it leads to an inference that discrimination was afoot. Additionally, Plaintiff alleges that the denial of her request for review for the tenure decision violated ODU's policies. Doc. 1, Ex. 15. These two facts, combined with Plaintiff having sufficiently alleged facts that satisfy the first three requirements of her prima facie case, makes her claim plausible. Thus, the Motion to Dismiss Count One of the Complaint is **DENIED**.

### ii. *Count Two of the Complaint- Retaliation*

While it is well settled that a dismissal for lack of jurisdiction does not have preclusive effect, it is likewise well established that in the Fourth Circuit, a summary judgment dismissal is a final adjudication on the merits. See Shoup, 872 F.2d at 1181.

Here, Plaintiff's retaliation claim in Hentosh I was dismissed when the Court granted Defendant's motion for summary judgment. No. 2:12cv222, Doc. 64 at 28–36. In its six (6) page discussion of the merits of Plaintiff's retaliation claim, the Court carefully reviewed the facts surrounding each of the allegedly retaliatory acts associated with the denial of tenure, before concluding that in each instance, Plaintiff had failed to produce evidence to establish a prima facie case of retaliation. Id. at 30, 34, 36. As the Court explained, Plaintiff failed to demonstrate a causal nexus between the protected activity (filing an EEOC charge) and the three adverse employment actions alleged. Id. at 30–36. Because Plaintiff's retaliation claim (Count Two) was disposed of in a final judgment on the merits in Hentosh I, it appears that it is barred by the doctrine of claim preclusion. Shoup, 872 F.2d at 1181.

However, Plaintiff's counsel represented to the Court, and counsel for the Defendant did not dispute, she appealed the summary judgment ruling in Hentosh I to the Fourth Circuit. At this juncture, the Court recognizes that if the Fourth Circuit affirms the summary judgment ruling, Hentosh's retaliation claim will be barred. Accordingly at this stage of the proceeding, the Court will **DENY** Defendant's Motion to Dismiss Count II of the Complaint **WITHOUT PREJUDICE**. Should the Fourth Circuit affirm the ruling of this Court in Hentosh I, the Court will, upon motion of the Defendant, grant it leave to re-file its motion to dismiss Count II.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Dismiss.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: March 7th, 2014

17